FILED
SUPERIOR COURT
OF GUAM

2022 MAY 24 PM 4:08

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, | CRIMINAL CASE NO. **CF0399-21** |
| vs. | **DECISION AND ORDER** |
| **CARLOS ROBERT COMPTON CAMACHO,** | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on January 19, 2022, for hearing on Defendant **CARLOS ROBERT COMPTON CAMACHO's** ("Defendant") Motion to Suppress Evidence. Present were Assistant Attorney General Richelle Y. Canto on behalf of the People of Guam ("the Government") and Defendant with counsel, F. Randall Cunliffe. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On August 30, 2021, Defendant was indicted with the following charges: (1) Possession of a Firearm without Valid Identification (As a Third Degree Felony); (2) Possession of a Concealed Firearm (As a Third Degree Felony); and (3) Possession of an Unregistered Firearm (As a Third Degree Felony). (Indictment, Aug. 30, 2021). These charges stem from the discovery of a semi-automatic pistol and ammunition after the effectuation of a traffic stop. (Decl. of Richelle Y. Canto, Magistrate's Compl., Aug. 14, 2021).

*People v. Camacho*
Case No. CF0399-21
Decision and Order

On November 5, 2021, Defendant filed the instant Motion. On November 17, 2021, the Government filed its Opposition, and on November 24, 2021, Defendant filed his Reply.

On January 19, 2021, the Court heard sworn testimony from Guam Police Department Officer Christopher Champion. At the conclusion of the hearing, the Court gave the parties leave to file proposed findings of fact and conclusions of law. On March 1, 2022, Defendant filed his Proposed Findings of Fact and Conclusions of Law and on March 16, 2022, the Government filed its Proposed Findings of Fact and Conclusions of Law. The Court subsequently placed the matter under advisement.

At the Suppression Hearing, Officer Champion testified to the following:

1. On August 13, 2021 around 4:40 a.m., Officer Champion was on patrol in Tumon when he saw a Toyota Tacoma coming down from Rivera Lane onto Route 14 with an expired registration decal.

2. Officer Champion made a u-turn and activated his emergency lights to pull the vehicle over. The vehicle did not stop immediately but continued on heading towards Santos Hill and eventually pulled into the parking lot by Chamorro Barbeque after a "slow roll".

3. Officer Dodd also arrived on the scene to assist shortly after.

4. Officer Dodd stood by the right rear passenger area and Officer Champion approached the driver, later identified as Defendant. Three individuals were in the vehicle – the driver, a female individual in the front passenger seat, and a male individual later identified as Mr. Cruz in the rear passenger seat. It was discovered later on that the female passenger was a minor.

5. Officer Champion asked for a driver's license and registration, to which Defendant was not able to provide. Officer Champion observed Defendant fumbling through documents which Officer Champion believed indicated he was possibly nervous.

6. Officer Champion smelt an odor of unburnt marijuana, which he acknowledged is not illegal.

7. Officer Champion asked Defendant if he could search the vehicle, to which Defendant said no.

8. Officer Champion asked for ID's from the other passengers, to which they also did not have.

9. Officer Champion testified that Defendant stated they had been at Capital Hotel smoking marijuana.

10. Officer Champion arrested Defendant for not having a driver's license.

11. Officer Champion asked the occupants to exit the vehicle. Officer Champion testified he was roughly three to four feet from the vehicle. When the female exited the vehicle, Officer Champion saw a box of 9mm ammunition. Officer Champion alerted the other officers based on his experience that if there was ammunition there was likely a gun.

12. Officer Champion advised Defendant of his *Miranda* rights and informed him that they found ammunition in the car.

13. Defendant didn't really respond and shook his head. Officer Champion testified that he may have said "I'm screwed" or "I'm in trouble."

14. Officer Champion testified that Defendant eventually gave consent to search the vehicle and that he described a gun being in a grey backpack. Officer Champion testified that when Defendant said "I'm screwed," he took that to mean that there was in fact going to be a gun inside the car.

15. Officer Champion could not recall if he asked Defendant if he had a firearms identification card, but testified that he ran Defendant's name through the system which would have the firearms identification database.

16. The female passenger told officers that she saw Defendant in possession of a box and the grey backpack and that he had placed the box and the bag in the vehicle.

17. Officer Champion also found in the car a heat modified glass pipe stained with white powdery residue which tested presumptive positive for methamphetamine. The glass

pipe was found on the right rear passenger floor near where Mr. Cruz was sitting. Officer Champion also found unburnt marijuana on the passenger floor.

18. Defendant was transported to the Tumon precinct and formally read his *Miranda* rights, which he refused to waive in writing.

19. Officer Champion testified that Capitol Bay Hotel is an area is frequented by people who engage in illicit sales of methamphetamine.

## DISCUSSION

Defendant moves the Court to suppress all evidence seized by the Guam Police Department in this matter because the "commission of a traffic offense which is a civil violation does not subject an offender to be arrested." (Deft. FFCL at 3). The Government argues in opposition that Defendant was properly arrested for Driving Without a Valid Driver's License and that Defendant was read his *Miranda* rights when he admitted there was a firearm within the vehicle. *See generally*, Gov't FFCL, Mar. 16, 2022.

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). Brief investigative detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "As a general matter, the decision to stop an automobile without a warrant is reasonable where the police have probable cause to believe that a traffic violation has occurred. Further, it is reasonable to stop a car where the police merely have a reasonable suspicion to believe the driver has committed a traffic violation." *Chargualaf*, 2001 Guam 1 ¶ 17 (citations omitted). "In order to determine whether an officer had reasonable suspicion sufficient to warrant a traffic stop, the court must look at the totality of the circumstances, taking into account the facts known to the officers from personal observation." *Johnson*, 1997 Guam 9 ¶ 6 (citation and quotation marks omitted). Furthermore, the reasonable suspicion must exist at the time the stop was initiated. *Id.* (citation omitted).

*People v. Camacho*
Case No. CF0399-21
Decision and Order

In this case, Officer Champion effectuated a traffic stop after observing a vehicle driving with an expired registration. The Court finds that the effectuation of the traffic stop was valid pursuant to *Chargualaf,* 2001 Guam 1. *See* 16 G.C.A. § 7101 ("Unless expressly exempted under [Title 16], a person shall not drive nor move, nor shall any owner permit to be driven or moved, upon a highway any vehicle which is not registered as required by [Title 16]."). After effectuating the traffic stop, Officer Champion found that the driver of the vehicle, Defendant, was operating the motor vehicle without a valid driver's license. Under Guam law, "a person shall not drive a motor vehicle upon a highway without having in his immediate possession a valid operator's or chauffeur's license issued under [Title 16]." 16 G.C.A. § 3101(a). "Except in cases where a different punishment is provided by [Title 16] or other law, every person who fails or refuses to comply with or violates any provision of [Title 16] is guilty or liable of a civil violation punishable by a fine not to exceed Five Hundred Dollars ($500.00)." 16 G.C.A. § 9108(a). Accordingly, Defendant was subject to two traffic violations for driving a vehicle with an expired registration and for driving without a license.

The Court must next determine whether the initial detention for the traffic violation ended and, if so, whether Defendant was subjected to a subsequent detention. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'— to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate that purpose.'" *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citations omitted).

> Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*Id.* at 355 (internal citations, quotation marks and alterations omitted"). Officer Champion asking Defendant whether or not he could search his vehicle indicates that the original

investigation of the traffic violation ended, as such inquiry was unrelated to the traffic violations. "Investigative questioning regarding criminal activity does not, in itself, implicate the Fourth Amendment." *Chargualaf*, 2001 Guam 1 ¶ 20 (citing *Florida v. Royer,* 460 U.S. 491 (1983)). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (citing *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)). *See also, Chargualaf*, 2001 Guam 1 ¶ 20 (the "Fourth Amendment is only at issue where the police detain or seize an individual while posing investigative questions.").

In this case, it was clear that Defendant was seized as Officer Champion testified he arrested him for driving without a valid driver's license. Defendant would therefore not believe that he was free to leave. *See Chargualaf*, 2001 Guam 1 ¶ 21. Further, the violations of Title 16 that Defendant was subject to were civil violations punishable by a fine. Under Guam law, an officer may arrest a person without a warrant under certain enumerated circumstances.[1] *See* 8 G.C.A. § 20.15(a). The Court does not find that any of the enumerated circumstances apply to the traffic violations in this matter. "An offense defined by this Code [Title 9] or by any other statute of this Territory, for which a sentence of imprisonment is authorized, constitutes a crime. Crimes are classified as felonies, misdemeanors or petty misdemeanors." 9 G.C.A. § 1.18(a). "An offense defined by this Code [Title 9] or by any other statute of this Territory constitutes a violation if it is so designated in this Code [Title 9] or in the law defining the offense or if no

---

[1] Title 8 GCA section 20.15 provides in relevant part:

A police officer may arrest in obedience to a warrant, or may, without a warrant, arrest a person:
  (1) Whenever the officer has reasonable cause to believe that the person to be arrested has committed an offense in the officer's presence;
  (2) When the person arrested has committed a felony, although not in the officer's presence;
  (3) Whenever the officer has reasonable cause to believe that the person to be arrested has committed a felony or misdemeanor whether or not a felony or misdemeanor has in fact been committed;
  (4) Who has escaped from any jail or prison or the lawful custody of a peace officer.

8 G.C.A. § 20.15(a).

---

*People v. Camacho*
Case No. CF0399-21
Decision and Order

other sentence than a fine, or fine and forfeiture or other civil penalty is authorized upon conviction. A violation does not constitute a crime and conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense." 9 G.C.A. § 1.18(f). In 2013, the Guam Legislature specifically repealed and re-enacted 16 G.C.A. § 9108 to change violations of Title 16 from a petty misdemeanor to a civil violation punishable by a fine. *See* P.L. 32-027 (May 10, 2013). Accordingly, the Court does not find that a civil violation of driving without a valid driver's license is an arrestable offense on its own. There was no testimony that Defendant appeared to be driving under the influence or that he had committed any other traffic offenses. Although Officer Champion indicated that he smelt an odor of unburnt marijuana, he acknowledged that simple possession of unburnt marijuana was not a crime.

"In the absence of a warrant, the police may lawfully conduct a search or seizure only if an exception to the warrant requirement applies. Voluntary consent is a recognized exception to the warrant requirement." *Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). The Court must examine, based on the totality of the circumstances, whether Defendant's consent was voluntary. *See id.* at ¶ 25. The Court examines the following factors:

> 1) whether the defendant was detained and the length of time of the questioning; 2) whether the defendant was threatened or intimidated by the police; 3) whether the defendant relied on misrepresentations or promises made by the police; 4) whether the defendant was in custody or under arrest when the consent was given; 5) whether the defendant was in a public or secluded place; and 6) whether the defendant objected to the search.

*Id.* (citation omitted). The Government has the burden to prove by a preponderance of evidence whether Defendant's consent was voluntary. *Id.* Although Officer Champion testified that Defendant eventually gave consent to search the vehicle, the Court does not find that the Government proved by a preponderance of the evidence that such consent was valid.

Here, Officer Champion requested to search Defendant's vehicle after a traffic stop was effectuated. The traffic stop was effectuated in public, on the side of the road. As noted earlier, Defendant was in custody. The Court, however, is unable to ascertain whether Defendant

actually gave informed and voluntary consent to a search of his vehicle. Officer Champion testified that when he first asked Defendant for consent to search the vehicle, Defendant said no. Officer Champion testified that he orally advised Defendant of his *Miranda* rights and informed him that they found ammunition in his car. Officer Champion testified that Defendant didn't really respond and shook his head. Officer Champion testified that Defendant may have said "I'm screwed" or "I'm in trouble." Officer Champion testified that Defendant eventually gave consent to search the vehicle and that he described a gun being in a grey backpack. Officer Champion testified that when Defendant said "I'm screwed," he took that to mean that there was in fact going to be a gun inside the car. Based on these facts, it is not clear that Defendant gave informed and voluntary consent to search. Further, when Defendant was later transported to the Tumon precinct and formally read his *Miranda* rights, he refused to waive his rights. Accordingly, the Court finds that the Government has not proven voluntary consent by a preponderance of the evidence.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Suppress. A Status Hearing is set for **July 18, 2022** at **9:30 a.m.**

**IT IS SO ORDERED** this ___ day of May, 2022.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam